UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PROVIDENT HEALTHCARE CAPITAL, LLC,
Plaintiff-Counter Defendant,

-v.-

REVERE CAPITAL ADVISORS, LLC,
Defendant-Counter Claimant.

24 Civ. 9493 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Provident Healthcare Capital, LLC brought this action against Defendant Revere Capital Advisors, LLC, to collect unpaid principal and accrued interest on a $500,000 loan. To date, over six years after the loan came due, Defendant has only paid $50,000 on its balance.

Plaintiff seeks summary judgment under Federal Rule of Civil Procedure 56 on its breach of contract claim and on Defendant's counterclaim for usury. For the reasons set forth below, the Court grants Plaintiff's motion.

## BACKGROUND[1]

### A. Factual Background

#### 1. The Parties Negotiate and Execute the Note

Nonparties PolyPhotonix Medical LTD and PolyPhotonix LTD (together, "PolyPhotonix") design, develop, and manufacture medical devices. (Pl. 56.1

1 The facts set forth in this Opinion are drawn from the parties' submissions in connection with Plaintiff's motion for summary judgment. The Court primarily sources facts from Plaintiff's Local Rule 56.1 Statement ("Pl. 56.1" (Dkt. #47)); the Declaration of Kileigh Stranahan in support of Plaintiff's motion ("Stranahan Decl." (Dkt #48)) and the exhibits attached thereto; Defendant's Counterstatement of Material Facts ("Def. 56.1" (Dkt. #53)); and the Declaration of Daniel J. Barnett in opposition to Plaintiff's motion ("Barnett Decl." (Dkt. #51)).

¶ 5). PolyPhotonix is a client of Defendant, a financial services firm. (*Id.* ¶¶ 2, 7).

In 2019, Defendant sought a bridge loan for PolyPhotonix to address PolyPhotonix's liquidity needs. (Pl. 56.1 ¶ 9). Defendant contacted Plaintiff, a direct investment fund for healthcare services companies, to provide such financing. (*Id.* ¶¶ 1, 4). The parties proceeded to negotiate loan terms.

On December 19, 2019, Plaintiff sent a draft promissory note to Defendant for a $500,000 loan at an 8% interest rate. (Pl. 56.1 ¶¶ 12-13). It also provided, among other terms, for a personal guaranty by Defendant's Chief Executive Officer, a three-month term, an 18% default interest rate (the "Default Interest Rate"), and additional default fees of 3% per month (the "Default Fees," and together with the Default Interest Rate, the "Default Provisions"). (*Id.* ¶¶ 12-15).

Defendant raised concerns about several of these terms, including the Default Provisions. (Pl. 56.1 ¶ 17). On December 21, 2019, Defendant made a counteroffer removing the personal guarantee, adding an option for a three-

---

Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein. Where a fact stated in a movant's Rule 56.1 Statement is supported by evidence and controverted only by a conclusory statement by the opposing party, the Court finds that fact to be true. *See* Local Civil Rule 56.1(c), (d). Where Defendant agrees to a fact set forth in Plaintiff's Rule 56.1 Statement in its entirety, the Court cites only to Plaintiff's Rule 56.1 Statement. The Court notes that Defendant's Counterstatement of Material Facts omitted numbering for its response to ¶ 32 of Plaintiff's Local Rule 56.1 Statement; all cites to Defendant's Counterstatement retain Plaintiff's original paragraph numbering.

For ease of reference, the Court refers to Plaintiff's memorandum of law in support of their motion for summary judgment as "Pl. Br." (Dkt. #46); to Defendant's memorandum of law in opposition to Plaintiff's motion as "Def. Opp." (Dkt. #52); and to Plaintiff's reply memorandum of law as "Pl. Reply" (Dkt. #54).

month term extension, reducing the default rate to 12%, and eliminating the Default Fees. (*Id.* ¶ 18).

On December 27, 2019, Plaintiff sent a revised draft to Defendant, retaining both the Default Provisions and three-month term. (Pl. 56.1 ¶¶ 21-23). Internally, Defendant resolved to prioritize the term extension, which, if accepted, made the Default Provisions "more palatable." (*Id.* ¶ 24). As a result, Defendant sent Plaintiff a revised draft later that same day proposing language for the three-month extension and accepting the Default Provisions. (*Id.* ¶ 25). On December 28, Plaintiff sent back a final draft, accepting Defendant's extension language in part, but placing ultimate extension approval in Plaintiff's sole discretion. (*Id.* ¶ 27).

On December 30, 2019, Defendant executed the promissory note (the "Note") and received $500,000 from Plaintiff. (Pl. 56.1 ¶¶ 28, 34).

**2. Defendant Fails to Repay the Note in Full**

Defendant did not make any payment to Plaintiff when the Note came due on March 30, 2020. (Pl. 56.1 ¶¶ 37-38). Throughout 2021 and 2022, Defendant assured Plaintiff that it would repay the Note once it raised additional capital, and on several occasions represented that it was either close to receiving or had received such financing. (*Id.* ¶¶ 39-41). The parties discussed potential repayment throughout 2023. (*Id.* ¶¶ 42-47). In April 2024, Plaintiff sent a demand letter to Defendant and PolyPhotonix, seeking payment of unpaid principal and interest. (*Id.* ¶ 48). The parties subsequently discussed a payment schedule. (*Id.* ¶¶ 49-52). In June and July 2024,

Defendant made two payments, totaling $50,000, under the Note. (Def. 56.1 ¶¶ 53-54). Neither Defendant nor PolyPhotonix has made any payments since. (Pl. 56.1 ¶ 55).

**B. Procedural Background**

Plaintiff filed its Complaint in this Court on December 12, 2024, seeking judgment for all amounts owed under the Note under claims for (i) breach of contract, (ii) breach of the implied covenant of good faith and fair dealing, and (iii) unjust enrichment. (Dkt. #1).[2] Defendant answered and brought a counterclaim on March 28, 2025, requesting that the Court declare the Note void because its Default Provisions, by charging an "annualized interest rate of 54%," exceeded the 20% annual interest rate allowed under Massachusetts' usury law, Mass. Gen. Laws ch. 271, § 49 ("Section 49"). (Dkt. #25).[3] Plaintiff answered the counterclaim on April 18, 2025. (Dkt. #26).

Discovery commenced upon the Court's March 26, 2025 entry of the parties' proposed Civil Case Management Plan and Scheduling Order. (Dkt. #23). The discovery period concluded on October 7, 2025, after twice being extended by this Court. (Dkt. #34; August 8, 2025 Minute Entry).

In anticipation of moving for summary judgment, on November 5, 2025, Plaintiff filed a letter motion requesting a conference (Dkt. #42), to which

---

2 Plaintiff does not seek summary judgment on its second and third claims, reserving each for trial. (Pl. Br. 1 n.1).

3 The parties agree that Massachusetts law governs the Note. *See Archer Invs. S.a.r.l.* v. *Loc. 282 Welfare Tr. Fund*, 462 F. App'x 122, 123 (2d Cir. 2012) (summary order) ("'Where, as here, the parties have agreed on the law that will govern their contract,' that choice of law will be enforced." (quoting *Finucane* v. *Interior Constr. Corp.*, 695 N.Y.S.2d 322, 324 (1st Dep't 1999))).

Defendant responded on November 20, 2025 (Dkt. #44). The Court held a pre-motion conference on November 25, 2025, and set a briefing schedule for Plaintiff's motion. (November 25, 2025 Minute Entry). Plaintiff timely filed its motion and supporting papers on January 9, 2026, seeking partial summary judgment on (i) its breach of contract claim and (ii) Defendant's counterclaim for usury. (Dkt. #45-48). Defendant filed its opposition and supporting papers on February 13, 2026. (Dkt. #51-53). Plaintiff replied on February 27, 2026. (Dkt. #54).

## DISCUSSION

### A. Applicable Law

Under Rule 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (quoting *Anderson*, 477 U.S. at 248). Furthermore, a particular fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.

The movant "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" *ICC Chem. Corp.* v. *Nordic Tankers Trading A/S*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Celotex*, 477 U.S. at

323). The movant can meet that burden in two ways: (i) by offering affirmative evidence that "demonstrate[s] the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, or, if the burden of proof would fall on the nonmovant at trial, (ii) by simply "point[ing] to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," *Jaramillo* v. *Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 322-23). Should the movant discharge that burden, the nonmovant must then "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Id.* (citing *Celotex*, 477 U.S. at 322-23). This requires the nonmovant to "go beyond the pleadings, and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Davis* v. *New York*, 316 F.3d 93, 100 (2d Cir. 2002) (internal quotation marks omitted) (quoting *Celotex*, 477 U.S. at 324); *accord Parks Real Est. Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dall. Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003) (citing *Anderson*, 477 U.S. at 255). Nevertheless, "[t]hough [the court] must accept as true the allegations of the party defending against the summary judgment motion, ... conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak* v. *City of*

*New York*, 88 F.3d 63, 71 (2d Cir. 1996); *accord Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

**B. Analysis**

Plaintiff contends that it is entitled to summary judgment on its breach of contract claim because there is no dispute of fact that Defendant has failed to repay the Note in full. Plaintiff further argues that, at this stage, the Court should reform the Default Provisions to set a revised default interest rate at the statutory maximum, dispensing with Defendant's counterclaim for usury. The Court agrees on both fronts.

**1. The Court Grants Plaintiff Summary Judgment on Its Breach of Contract Claim**

To prevail on a breach of contract claim under Massachusetts law, "a plaintiff must demonstrate that [i] there was an agreement between the parties; [ii] the agreement was supported by consideration; [iii] the plaintiff was ready, willing, and able to perform [its] part of the contract; [iv] the defendant committed a breach of the contract; and [v] the plaintiff suffered harm as a result." *Bulwer* v. *Mount Auburn Hosp.*, 46 N.E.3d 24, 39 (Mass. 2016). Plaintiff satisfies each element.

*First*, the Note is a valid contract, *see JPMorgan Chase & Co.* v. *Casarano*, 963 N.E.2d 108, 111 (Mass. App. Ct. 2012) ("Promissory notes are contracts[.]"), to which Defendant admits it agreed (Def. 56.1 ¶ 28). *Second*, the "reciprocal exchange of benefit and detriment" here — an agreement to loan $500,000 for repayment of principal plus interest — "constitute[s]

consideration[.]" *Huang* v. *Ma*, 201 N.E.3d 713, 718 (Mass. 2023). *Third*, Plaintiff fulfilled its obligations under the Note by wiring $500,000 to Defendant. (Pl. 56.1 ¶ 34). *Fourth*, Defendant admits it breached its obligations by failing to repay the Note when it came due. (Def. 56.1 ¶¶ 37-38 (admitting that the Note came due on March 30, 2020, and that it did not make any payment on or before that date)). *Fifth* and finally, having only collected a fraction of the principal and interest it is owed (*id.* ¶¶ 53-55), Plaintiff has suffered harm resulting from Defendant's breach. Thus, without a genuine dispute of material fact as to each element of the claim, the Court grants summary judgment in Plaintiff's favor on its breach of contract claim. *See Celotex*, 477 U.S. at 322.[4]

### 2. The Court Grants Plaintiff Summary Judgment on Defendant's Usury Counterclaim

#### a. The Note Violates Massachusetts' Usury Statute

Massachusetts' usury statute prohibits loans whose "interest and expenses" exceed 20% per annum. Mass. Gen. Laws ch. 271, § 49(a).[5] However, the Note effectively provides for a default interest rate of 54% per annum through its Default Interest Rate (18% per annum) and Default Fees

---

4 Defendant argues that summary judgment cannot enter on Plaintiff's breach of contract claim "as a matter of law" because it "depends on enforcing default interest and fees" whose enforceability it asserts is "disputed[.]" (Def. Opp. 4). Defendant cites no authority for this proposition. (*See id.*). In any event, for the reasons discussed below, Defendant's counterclaim fails as a matter of law; for this reason, so too must its argument on Plaintiff's breach of contract claim.

5 Loans registered with the Massachusetts Attorney General are exempt from this cap. Mass. Gen. Laws ch. 271, § 49(d). Plaintiff concedes that it did not register the Note. (Pl. Reply 5 n.4).

(3% per month, totaling 36% per annum). (Stranahan Decl., Ex. 29-A). Because the Note's "interest" (the Default Interest Rate) and "expenses" (the Default Fees) combine to far exceed the 20% maximum, the Note violates Section 49. Mass. Gen. Laws ch. 271, § 49(a); *see also James B. Nutter & Co.* v. *Est. of Murphy*, 88 N.E.3d 1133, 1137 (Mass. 2018) ("[I]nterpretation of a contract is a question of law[.]").[6]

**b. The Note Should Be Reformed, Not Voided**

The question remains of what the Court should do given that the Default Provisions violate Section 49. Defendant's counterclaim seeks to void the Note (Dkt. #25), whereas Plaintiff asks the Court to reform the Default Provisions by setting them to the maximum interest rate permitted by Massachusetts law (Pl. Br. 12-14). Plaintiff's proposed remedy is proper here.

Section 49 provides that "[a]ny loan at a rate of interest [greater than 20%] may be declared void … upon petition by the person to whom the loan was made." Mass. Gen. Laws ch. 271, § 49(c). However, Section 49 "does not

6 Defendant states in its opposition that "[w]hether [Plaintiff's] recurring monthly Default Fee functions as interest is a fact-intensive inquiry that cannot be resolved on summary judgment." (Def. Opp. 5). Perplexingly, this line of argument seems to suggest that the Default Fees may not fall under Section 49, which, if true, would expose Defendant to otherwise-usurious Default Fees Plaintiff has effectively conceded violate Massachusetts law. (*See* Pl. Br. 1).

Regardless, Defendant is incorrect. The gating question here, as explained above, is not whether the Default Fees "function[ ] as interest" (Def. Opp. 5), but rather whether they constitute either interest *or* expenses charged in exchange for a loan of money, Mass. Gen. Laws ch. 271, § 49(a); *see also Allegheny Int'l Credit Corp.* v. *Bio-Energy of Lincoln, Inc.*, 485 N.E.2d 965, 970 (Mass. App. Ct. 1985) ("[T]he statute, as construed [by the Supreme Judicial Court of Massachusetts], requires that all fees and expenses be included in determining the interest rate being charged." (citing *Begelfer* v. *Najarian*, 409 N.E.2d 167, 175 n.16 (Mass. 1980))). The Default Fees, requiring a 3% monthly payment on the principal amount outstanding, constitute an expense, rendering the default interest rate greater than the statutory maximum.

mandate a voiding of the loan." *Beach Assocs., Inc.* v. *Fauser*, 401 N.E.2d 858, 863 (Mass. App. Ct. 1980). Rather, the Supreme Judicial Court of Massachusetts has read "the permissive language of [Section 49] … to empower a court to utilize its full range of equitable powers … in order to reach an appropriate result[.]" *Begelfer* v. *Najarian*, 409 N.E.2d 167, 173-74 (Mass. 1980). To do so, Massachusetts courts look to "all the facts, circumstances, and conditions surrounding the loan" to construct a remedy "consistent with equitable principles." *Beach Assocs., Inc.*, 401 N.E.2d at 863-64. Importantly, courts may construct such a remedy at this procedural posture. *See, e.g.*, *Begelfer*, 409 N.E.2d at 175 (striking a default interest provision while reviewing a summary judgment decision); *Patel* v. *Dammai*, No. 1784CV0113BLS1, 2017 WL 4479208, at *3 (Mass. Super. Aug. 7, 2017) (reforming an interest rate at summary judgment).

Voidance is particularly appropriate where "the integrity of the loan itself [is] questionable," *Begelfer*, 409 N.E.2d at 174-75, because the defendant "was misled, coerced, under duress, or [victim to] other misconduct," *Auctus Fund, LLC* v. *Drone Guarder, Inc.*, 662 F. Supp. 3d 28, 40 (D. Mass. 2023). Defendant seems to suggest it was "misled" here, *id.*, arguing that the Note was intended "to serve functionally as a short-term bridge to be repaid by PolyPhotonix from the proceeds of a subsequent financing" in which Plaintiff was an "anticipated participa[nt]" (Def. Opp. 2-3). In perhaps its strongest argument on the point, Defendant asserts that but for its belief that Plaintiff would help raise additional capital for PolyPhotonix, with which capital it could have repaid

Plaintiff, Defendant would not have executed the Note — a short-term loan with severe default penalties.

To support this argument, however, Defendant cites only to the declaration of Daniel J. Barnett, its Chief Executive Officer.[7] Mr. Barnett's declaration merely states that Defendant "anticipated cooperation between [the parties] in raising capital for PolyPhotonix." (Barnett Decl. ¶ 12). That statement does not make clear whether the "anticipated cooperation" related to "*subsequent* fundraising" or the Note itself. (Def. Opp. 2-3 (emphasis added)). If the anticipated cooperation referred to the Note itself, there is no deception because the parties did cooperate in raising capital for PolyPhotonix. If the comment related to subsequent financing, the declaration would run contrary to contemporaneous evidence — namely, email exchanges between the parties throughout 2021 and 2022 relating to *Defendant's* progress in securing additional financing for PolyPhotonix — devoid of any mention of Plaintiff's supposed role in any financing effort. (Pl. 56.1 ¶¶ 39-41). The comment is thus insufficient to raise a genuine dispute as to the integrity of the loan. *See Messinger* v. *JPMorgan Chase Bank, N.A.*, 126 F. Supp. 3d 376, 382 (S.D.N.Y. 2015) ("[V]ague assertions supported only by self-serving statements in the nonmoving party's affidavit are insufficient to defeat a properly supported

7 Defendant's internal belief that the Note was its "first mandate" with Plaintiff (Pl. 56.1 ¶ 20) — a fact that it did not cite in its opposition — fares no better because Defendant does not direct the Court to any evidence that this belief was the result of being "misled" by Plaintiff, *see Auctus Fund, LLC* v. *Drone Guarder, Inc.*, 662 F. Supp. 3d 28, 40 (D. Mass. 2023).

summary judgment motion." (quoting *Rodriguez* v. *Allstate Indem. Co.*, No. 12 Civ. 340 (WMS), 2015 WL 3823730, at *2 (W.D.N.Y. June 19, 2015))).

Neither the parties nor the Court have identified an analogous case where a court has voided a loan for violating Section 49. (*See* Pl. Br. 10 & n.4). On these facts, and in the absence of any misconduct by Plaintiff, this Court will not be the first to do so. As described above, the "facts, circumstances, and conditions surrounding the loan" reflect a legitimate negotiation process between the parties. *Beach Assocs. Inc.*, 401 N.E.2d at 863-64. Each side made concessions throughout the bargaining process, including as to the Default Provisions. (*See* Pl. 56.1 ¶¶ 12-15, 17-18, 21-22, 25, 27). Therefore, reformation is appropriate. *See Beach Assocs. Inc.*, 401 N.E.2d at 864 (explaining that the parties' agreement on an interest rate after negotiation supported reformation over voidance); *see also Allegheny Int'l Credit Corp.* v. *Bio-Energy of Lincoln, Inc.*, 485 N.E.2d 965, 970 (Mass. App. Ct. 1985) (finding it "inequitable to allow the defendants, who have received a substantial sum of money … to receive a windfall" through voidance).

Defendant's additional arguments fail. *First*, Defendant contends that summary judgment is inappropriate here because issues of equity "require factual development." (Def. Opp. 5). This argument is wrong as a matter of fact and law. The record here is extensive and the result of a lengthy discovery process. And Massachusetts courts have selected equitable remedies for usury on similarly undisputed records at this stage. *See, e.g.*, *Begelfer*, 409 N.E.2d at 175; *Patel*, 2017 WL 4479208, at *3. *Second*, and bafflingly, Defendant

contends that the "negotiation history and drafting context are disputed" (Def. Opp. 6) despite admitting to each of Plaintiff's material facts relating to the Note's negotiation history and drafting context (*see generally* Def. 56.1). Thus, there is no dispute as to the "facts, circumstances, and conditions surrounding the loan." *Beach Assocs. Inc.*, 401 N.E.2d at 863-64; *see* Local Civil Rule 56.1(a), (c).

**c. Default Interest at the Statutory Maximum Is the Appropriate Remedy**

Having determined that reformation is appropriate, the Court is left to determine what default provision it should impose.

Plaintiff suggests the Court set a revised default interest rate at the statutory maximum and cites a litany of decisions reducing agreed upon interest rates exceeding the statutory maximum to a rate of 20%. (*See* Pl. Br. 13 (collecting cases)). To select the maximum interest rate, these courts considered, as relevant here, that the contractual interest rate was (i) negotiated, *see, e.g.*, *Beach Assocs., Inc*, 401 N.E.2d at 864, (ii) at arm's-length, *see, e.g.*, *id.*, (iii) in the mistaken belief it was proper, *see, e.g., id.*, (iv) agreed to freely and willingly by the borrower, *see Patel*, 2017 WL 4479208, at *3, and (v) never complained about until after the borrower was unable to secure permanent financing, *see, e.g.*, *Beach Assocs., Inc*, 401 N.E.2d at 864.

There can be no genuine dispute of material fact that each factor points in favor of awarding the statutory maximum here. *First*, as discussed, the Note was a product of legitimate negotiation, producing concessions each way. (*See* Pl. 56.1 ¶¶ 12-15, 17-18, 21-22, 25, 27, 29). *Second*, the transaction was at

arm's-length. (*Id.* ¶ 3). *Third*, the parties believed the Default Provisions were legally permissible. (Def. 56.1 ¶¶ 33, 56). *Fourth*, Defendant willingly agreed to the Note. (Pl. 56.1 ¶ 28). *Fifth*, rather than complain about the Default Provisions after executing the Note, Defendant repeatedly assured Plaintiff that it would fulfill its obligations under the Note upon successful financing of PolyPhotonix. (*Id.* ¶¶ 39-41).

Most importantly, a court selecting an equitable remedy must seek to "achieve the parties' intent at the time of the loan." *Patel*, 2017 WL 4479208, at *3; *see also Caron* v. *Horace Mann Ins. Co.*, 993 N.E.2d 708, 711 (Mass. 2013) ("The 'doctrine of reformation is driven by respect for the parties' intent and gives effect to the terms mutually agreed upon by the parties.'" (quoting *Berezin* v. *Regency Sav. Bank*, 234 F.3d 68, 72 (1st Cir. 2000))). The parties' negotiation over the Note's terms reflect a clear intent to impose severe default penalties to offset Plaintiff's concessions on loan term extensions and the personal guaranty. (*See* Pl. 56.1 ¶¶ 12-15, 17-18, 21-22, 25, 27). Where, as here, Defendant ultimately "agreed to pay twenty percent (and then some)" through a legitimate negotiation process, reformation to the statutory maximum is appropriate to best "reflect the[ ] intention" of the parties. *Beach Assocs., Inc.*, 401 N.E.2d at 864 n.9.[8]

[8] Defendant's $50,000 payment on the Note shall be credited against the interest due, not the principal. *See City Coal Co. of Springfield* v. *Noonan*, 677 N.E.2d 1141, 1143 (Mass. 1997) ("It is well established that, when a debtor pays money to a creditor, absent any express agreement to the contrary, the payment is first applied to the outstanding interest obligation and then to principal.").

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's partial motion for summary judgment. Defendant is in breach of its contract with Plaintiff, which contract is reformed to remove the Default Provisions and replace them with a new default interest rate of 20% per annum, accruing from the date of default on March 31, 2020.

The parties shall provide a status update regarding next steps in the matter on or before **August 5, 2026**.

The Clerk of Court is directed to terminate the pending motion at docket entry 45.

SO ORDERED.

Dated: July 21, 2026
New York, New York

Katherine Polk Failla

KATHERINE POLK FAILLA
United States District Judge